**E-FILED**
Wednesday, 26 August, 2015  03:08:17 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WILLIAM JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-1186 |
| | ) | |
| NATIONAL CART CO., INC., a corporation, | ) | |
| and NATIONAL CART, LLC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| NATIONAL CART CO., INC., a corporation, | ) | |
| and NATIONAL CART, LLC., | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| a corporation, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

# O R D E R

This matter is now before the Court on Defendants' Motion for Summary Judgment and Motion to Exclude Expert Testimony.  For the reasons set forth below, the Motion for Summary Judgment [67] is DENIED, and the Motion to Exclude Expert Testimony [65] is DENIED.

## BACKGROUND

At some point, Wal-Mart approached National Cart Co. ("NCC") and WinHolt Corp. to design and manufacture the ST-rocket cart, a material handling cart used to bring stock to the

customer floor, based on parameters provided by Wal-Mart. Within these parameters, there was a

collaborative effort during the design process. Once the design was finalized, Wal-Mart provided

its approval; NCC and Winholt began mass producing the ST-rocket carts for use exclusively in

Wal-Mart stores. Wal-Mart holds a patent on a cart that is similar, but not identical to, the ST-rocket

cart, but there are no national standards governing the design or safety of these carts.

On December 4, 2010, at approximately 3:15 am, William Jones ("Jones") was working in

the Wal-Mart store in Princeton, Illinois. In the course of his duties, he loaded a rocket cart with

several boxes of cheese. He then pushed a shopping cart in front of him and pulled the rocket cart

loaded with cheese behind him as he made his way to the customer area. As Jones slowed to go

around a corner, the cart struck his left heel. He brought this action alleging that Defendants are

strictly liable for the defective design of the rocket cart, as well as negligent. Defendants have

moved for summary judgment and to exclude the expert testimony of Plaintiff's expert witnesses,

Joseph Leane and Manuel Rueda. The motions are fully briefed, and this Order follows.

## I.  MOTION TO EXCLUDE EXPERT TESTIMONY

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion
> or otherwise, if (1) testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and methods,
> and (3) the witness has applied the principles and methods reliably to
> the facts of this case.

The Court's role in determining the admissibility of expert testimony is that of a gatekeeper.

*General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 517 (1997); *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In performing this role, the Court must determine

whether the expert testimony in question meets two essential requirements: (1) it must be based on scientific, technical, or other specialized knowledge and (2) it must assist the trier of fact in understanding the evidence or determining a fact in issue. *Daubert*, 509 U.S. at 592; Fed. R. Evid. 702. The opinion must also be reliable and relevant. *Daubert*, 509 U.S. at 597; *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir.2010) .

*Daubert* provides a list of four factors to be considered in determining the soundness of the expert's methodology:

> (1) whether the proffered conclusion lends itself to verification by the scientific method through testing; (2) whether it has been subjected to peer review; (3) whether it has been evaluated in light of the potential rate of error of the scientific technique; and (4) whether it is consistent with the generally accepted method for gathering the relevant scientific evidence.

*Cummins v. Lyle Industries*, 93 F.3d 362, 368 (7th Cir. 1996), *citing Daubert*, 509 U.S. at 594-95. However, these factors are non-exclusive and do not constitute a definitive checklist. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The key concern is that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*., at 152. Ultimately, the trial judge is vested with considerable discretion in deciding whether particular expert testimony is reliable. *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004).

### A.     Joseph Leane

Defendants first move to bar the testimony of Joseph Leane, a mechanical engineer with Hazard, Keefe and Leane Engineering. They challenge Leane's qualifications based on his admission that he has not previously investigated rocket carts but has investigated other carts, such as shopping carts, luggage carts, and linen carts in the past. This argument may have more merit if

- 3 -

Defendants had cited authority indicating that an expert witness must have previously investigated the exact product at issue in order to provide an opinion in a case. In fact, as the rocket carts are manufactured exclusively for Wal-Mart it would be highly unlikely that any expert had previously tested, investigated, or obtained peer review of his opinions on rocket carts.

Leane holds a B.S. and M.S. in Mechanical Engineering, is a licensed professional engineer in Illinois, Wisconsin, Indiana, and Michigan, and is board certified in forensic engineering. Since 1988, he has been a consulting engineer, performing mechanical engineering design analysis and hazard identification for various clients. Specifically, Leane has investigated non-motorized, hand propelled carts and material handling devices on "at least a couple of dozen" occasions. Accordingly, the Court finds Leane to be properly qualified by knowledge, skill, experience, and education.

Defendants further challenge Leane's reliance on a report provided by Wal-Mart called the "national claims run," which purports to identify work-related incidents relating to rocket carts causing injuries to the ankle/heel/foot between January 1, 2008 and November 10, 2014. They argue that the report is inadmissible because: (1) the report did not include Jones' accident despite the fact that it happened within the reporting period; (2) the report contains no further detail about the incidents; (3) it is unclear whether the incidents all involved carts manufactured by Defendants or if some carts were made by other manufacturers; (4) the report did not disclose the names of the persons injured or the locations of the incidents; (5) the report did not indicate how the incidents were ultimately resolved or if lawsuits/worker's compensation claims resulted; (6) the report did not indicate whether complaints were filed with any state or federal agency following the incidents; (7)

the report does not indicate which model of rocket cart was involved in each incident; and (8) the report does not indicate that Wal-Mart advised Defendants of any of these incidents.

The national claims run report was provided by Wal-Mart under court order in this case. Jones responds that it is the most comprehensive identification of injury causing impacts by rocket carts available because they are manufactured for and used exclusively by Wal-Mart. There is only one other manufacturer, namely Winholt, and all carts were made to the same specifications. The two models of rocket carts at issue are substantially similar in many respects. The Court agrees that the identified "deficiencies" in the national claims run go to weight rather than admissibility and can be explored thoroughly on cross-examination. Reliance on the national claims run report does not warrant a finding that Leane's testimony was unreliable.

Defendants argue that Leane's conclusion that the number of claims in the report is probably underreported is "indisputably false due to the lack of any sufficient facts or data to confirm his personal suspicions." However, Leane had at least one fact to support this opinion, namely that Jones' own accident did not appear on the report. Thus, the opinion that the number of accidents is underreported is supported by fact. While placing a precise number on the degree of underreporting would be speculative, the Court does not understand Leane to attempt to do so.

On the question of alternative design, Defendants take issue with the fact that neither of Leane's proposed alternatives (e.g., placing a metal guard plate and moving the castor wheels inward) has been subjected to peer review and publication or has been generally accepted in the scientific community. However, the record indicates that Defendants have used both alternative designs on other carts that they have manufactured, including the predecessor to the rocket cart involved in Jones' accident. Jones responds that Leane's hazard identification and control analysis

- 5 -

conforms to the methodology set forth in professional publications such as the National Safety Council Accident Prevention Manual. It is not possible to test the precise cart involved in Jones' accident, because it is unknown which cart was involved. Leane therefore took a random sample of rocket carts in use at the Princeton, Illinois store and tested them. He then obtained the services of a biomechanical expert to determine the effects that the alternative designs would have on future injuries and relied on the resulting opinion. Defendants complain that there was no human testing, but mathematical calculations or simulations based on well-accepted concepts of engineering/ physics are routinely accepted in lieu of physical, human testing. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 815-16 (7th Cir. 2012).

The Court therefore concludes that Leane is properly qualified. His experience and education as a mechanical engineer and hazard identification specialist enables him to provide testimony that will assist the trier of fact in understanding the evidence and determining facts in issue. Leane's testimony is sufficiently based on facts/data, reliable principles/methods, and has been applied reliably to the facts of this case. Defendant's Motion to Exclude Leane's expert testimony is therefore denied.

### B.  Manuel Forero Rueda

Defendants next object to the testimony of Rueda, a biomechanical engineer with Scientific Expert Analysis, Ltd., retained by Leane to determine how the proposed design change of adding a metal guard plate would effect the Achilles region from a biomechanical standpoint. Although he could not determine that the design change would eliminate the risk of injury completely, Rueda concluded that it would reduce the tensile stress on human skin by about 90% and thereby decrease the likelihood of injury.

- 6 -

Defendants first argue that Rueda should be excluded because he has never testified in a deposition, trial, or administrative proceeding, has limited experience in material handling or cart cases, and has not completed any research studies or publications specifically addressing carts. If the failure to have given previous testimony as an expert alone was fatal to being qualified as an expert witness, then no experts would ever be qualified, as every expert has to testify for a first time. *See Hecny Transportation, Inc. v. Chu*, 2003 WL 21823610 (N.D.Ill. Aug. 5, 2003) (holding that "[a]n expert witness is not to be disqualified from testifying because he lacks previous litigation experience as a paid expert witness.")

Rueda has a B.S. in mechanical engineering, an M.S. in automotive engineering, and a Ph.D. in mechanical engineering. He has done post-doctoral research on impact biomechanics, impact testing, and accident reconstruction. Rueda's education and experience in the field of biomechanical engineering provide him with specialized knowledge on the effect of forces on parts of the human body sufficient to testify to the effect of a prototype alternative design on impacts to the heels and ankles of potential victims. He then performed a study inspecting and testing an exemplar rocket cart with various loads and at various speeds, both with and without the prototype guard to determine the possible angles of contact the cart could have with the Achilles region, as well as the specific areas of the cart that could come into contact with the heel or ankle. He relied on scientific literature and studies to calculate the tensile strength of human skin. Based on this testing, Rueda concluded that the alternative design guard proposed by Leane would reduce the tensile stress on the skin by 90% by increasing the contact area between the card and the skin and thereby reducing the concentrated load on the skin. While Defendants disagree with Rueda's conclusions, they have not established that his methodology was unreliable. Accordingly, Defendants' complaints that Rueda

did not believe the injury to be serious or that he did not take into account the tandem operation of the grocery cart in front of the rocket cart go to weight rather than admissibility and can be explored on cross-examination.

The Court therefore concludes that Rueda is properly qualified.  His experience and education as a biomechanical engineer and research in the area of impact testing enables him to provide testimony that will assist the trier of fact in understanding the evidence and determining facts in issue.  Rueda's testimony is sufficiently based on facts/data, reliable principles/methods, and has been applied reliably to the facts of this case; Rueda's testimony is also of the kind that Leane could reasonably rely on in rendering his own opinions.  Defendant's Motion to Exclude Rueda's expert testimony is therefore denied.

## II.    MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A material fact is one that might affect the outcome of the suit.  *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000).  The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show there is a genuine issue of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co., Ltd.*, 475

U.S. at 588.  Any disputed issues of fact are resolved against the moving party. *GE v. Joiner*, 552 U.S. 136, 143 (1997).  The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue.  *Celotex Corp.*, 477 U.S. at 323.  Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial.  *Id*. at 324.  Where a proposed statement of fact is supported by the record and not adequately rebutted, a court will accept that statement as true for purposes of summary judgment; an adequate rebuttal requires a citation to specific support in the record.  *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998).  This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party.  A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### DISCUSSION

### A.      Strict Liability

To prevail in a strict liability claim, the plaintiff must prove that: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; (3) the condition existed at the time the product left the manufacturer's control; and (4) an injury to the plaintiff, (5) that was proximately caused by the condition.  *Sollami v. Eaton*, 201 Ill.2d 1, 7 (2002); *Mikolajczyk v. Ford Motor Co.*, 231 Ill.2d 516, 525 (2008).  Such actions may be premised on manufacturing defects, design defects, or failure to warn.  *Id.*; *Salerno v. Innovative Surveillance Technology, Inc.*, 402 Ill.App.3d 490, 497 (1st Dist. 2010).  Here, Jones alleges a design defect, which occurs when the unit conforms to the intended design but the design itself renders the product unreasonably

dangerous. *Id.* The focus of the inquiry is on the product rather than the conduct of the manufacturer. *Blue v. Environmental Engineering, Inc.*, 215 Ill.2d 78, 95 (1ˢᵗ Dist. 2005).

To determine whether the product was unreasonably dangerous in a design defect case, Illinois courts apply the consumer-expectation test or the risk-utility test, or both, to assess whether a plaintiff has met his or her burden of proof. *Salerno*, 402 IllApp.3d at 497; *Calles v. Scripto-Tokai Corp.*, 224 Ill.2d 247, 256 (2007); *Mikolajczyk*, 231 Ill.2d at 541 (noting that where both tests are relied on in the same case, the consumer-expectation component becomes part of the balance in the risk-utility test.) To succeed under the consumer-expectation test, a plaintiff must establish that "the product failed to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Duffy v. Togher*, 382 Ill.App.3d 1, 14 (1ˢᵗ Dist. 2008). To prevail under the risk-utility test, a plaintiff must show that "the magnitude of the danger outweighs the utility of the product, as designed." *Id.*

Defendants argue that under the consumer-expectation test, the consumer in this case is Walmart, which designed and purchased the rocket carts for use in its stores. As Wal-Mart has taken the position that the rocket carts fulfill its purposes and meet its expectations, Jones cannot meet his burden under this test. However, in *Mikolajczyk*, the Illinois Supreme Court suggested that the proper focus was on the expectations of the ordinary consumer who would be harmed if the product failed, which in this case would be Jones and other employees. 231 Ill.2d at 530. Accordingly, this argument is without merit.

Plaintiff purports to apply both tests, incorporating the consumer-expectation test as a consideration to balance under the risk-utility test. Jones argues that the purpose of the rocket cart was to move goods from one place to another without injuring the operator if the cart was being used

in a reasonably foreseeable manner.  Defendants have not argued that Jones was misusing the cart or using it in an unforeseeable manner.  To the contrary, it is undisputed that he was pulling the cart behind him using the pull handle as intended and instructed.  When using the cart as intended, Jones asserts, a reasonable consumer like himself would not expect the cart to impact his ankle in such a manner as to sever his skin in his Achilles region.  A plaintiff can reasonably expect that the rocket cart, if properly designed, would be safe to use for its intended purpose of moving goods from one place to another within the store without causing injury.  *See Hansen v. Baxter Healthcare Corp.*, 198 Ill.2d 420, 435 (Ill. 2002).

Under the risk-utility test, factors to be considered in balancing the risk against the utility of the product include: (1) the availability and feasibility of alternate designs at the time of the product's manufacture; (2) that the design used did not conform to the design standards in the industry, design guidelines provided by an authoritative organization, or design criteria set by legislation or governmental regulation; (3) the utility of the product to the user and to the public as a whole; (4) the safety aspects of the product, including the likelihood that it will cause injury and the probable seriousness of the injury; and (5) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.  *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 85.

Jones has introduced expert testimony regarding the availability and feasibility of two alternate designs, and the Court has rejected Defendants' request to exclude this testimony.  Plaintiff has also introduced evidence indicating that both of his proposed alternate designs (or something functionally analogous) had been used in the past on other carts manufactured by Defendants.  Defendant offers contrary evidence, but it is not for the Court to resolve conflicting evidentiary

issues on summary judgment.  There is no dispute that there are no applicable national design standards, criteria, or regulations.  Wal-Mart states that the rocket carts and their nesting feature are very useful to the company, and there is no evidence indicating that the proposed alternatives would impair the usefulness or nesting ability of the carts.  Jones relies on the national claims run report to demonstrate that carts like this caused an average of 3.5 similar injuries per month and also cites other evidence suggesting that injuries to the toes, feet, and lower legs are among the most common injuries caused by the operation of hand carts.  Defendants argue that NCC was previously unaware of any injuries caused by the rocket cart; however, it is clear from Wal-Mart's data that injuries occurred, and the fact that NCC's President was personally unaware of any injuries caused by rocket carts prior to this case is simply not equivalent to establishing that there were no such injuries.

There is no evidence promoting the inference that either of the proposed alternative designs would be incompatible with the rocket cart's design or nesting feature.  Moreover, Leane's calculations claim that the relocation of the wheel castor assembly would result in no additional cost, and the addition of the metal guard would be no more than $8.94 per cart, which translates to $0.00015 per customer in the United States for a company that reported revenue of $485.7 billion in 2014.  Accordingly, when analyzed under the integrated consumer expectation test and risk/benefit analysis test, the Court finds a genuine issue of material fact that cannot be resolved on summary judgment with respect to whether the rocket cart was unreasonably dangerous.  Summary judgment must therefore be denied as to the strict liability claim.

### B.    Negligence

Count II alleges that the rocket carts were negligently designed.  Negligent design claims are addressed under the framework of common law negligence.  *Calles*, 224 Ill.2d at 270; *Salerno*, 402

- 12 -

Ill.App.3d at 501.  "The essential elements of a cause of action based on common law negligence may be stated briefly as follows: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach."  *Ward v. K-Mart Corp.*, 136 Ill.2d 132, 140 (Ill. 1990); *Calles*, 224 Ill.2d 247 (2007).

Courts have held that manufacturers have "a nondelegable duty to design reasonably safe products."  *Salerno*, 402 Ill.App.3d at 501, *citing Calles*, 224 Ill.2d at 270.  The issue is not whether the product implements the safest design or a design that is incapable of causing injury, but rather whether the condition was unreasonably dangerous.  *Id.*; *Baltus v. Weaver Division of Kidde & Co.*, 199 IllApp.3d 821, 829 (1990).  "Thus, the threshold question is not whether the product could have been made safer, but whether it is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function."  *Salerno*, 402 Ill.App.3d at 501.  The Court has found a genuine issue of material fact requiring resolution at trial with respect to the analogous inquiry regarding the condition of the product in the strict liability claim, and the same result necessarily follows with respect to this claim.

The additional consideration in a negligence claim is the manufacturer's fault.  *Calles*, 224 Ill.2d at 264.  In other words, did the manufacturer exercise "reasonable care" in the product's design.  *Id.*  This can be demonstrated by showing that the manufacturer knew or should have known of the risk posed by the design at the time of manufacture.  *Id.*  Jones has introduced evidence that other carts previously manufactured by Defendants were equipped with guards to prevent contact with the foot or heel and that the castor wheels had been placed further away from the edge of the cart.  It is also undisputed that the material handling cart industry recognizes that injuries to toes, feel and lower legs are among the most common injuries resulting from hand cart operations.

- 13 -

Accordingly, Plaintiff has made a sufficient showing that Defendants knew or should have known of the risk posed by the rocket cart design at the time of manufacture to survive summary judgment on the negligence claim

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment [67] is DENIED, and the Motion to Exclude Expert Testimony [65] is DENIED.  This matter is ready for final pretrial conference, which remains set for September 14, 2015, at 10:00 a.m by telephone.

ENTERED this 26th day of August, 2015.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge